IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NATHAN PINZON-BILBRAUT

    Plaintiff,

v.

COMMONWEALTH OF PUERTO RICO, *et al.*

    Defendants.

**Civil No. 10-1630 (SEC)**

**OPINION and ORDER**

Before the Court are the above-captioned defendants' ("Defendants") Motion to Dismiss the First Amended Complaint (Docket # 18) and plaintiff Nathan Pinzon-Bilbraut's opposition thereto (Docket # 33). After reviewing the filings and the applicable law, Defendants' motion is **GRANTED.**

**Background**

Pinzon-Bilbraut, who suffers from mild mental retardation, filed this suit under the United States Constitution, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, Title VII of the Civil Rights Act, and under Puerto Rico law. The named defendants are (1) Pinzon-Bilbraut's former employer, the General Services Administration of the Commonwealth of Puerto Rico (the "GSA"); (2) the Commonwealth of Puerto Rico; (3) the former administrator of the GSA, Jesus F. Mendez-Rodriguez ("Mendez"); (4) the current administrator of the GSA, Carlos E. Vazquez-Pesquera ("Vazquez"); (5) six GSA coworkers of Pinzon-Bilbraut (the "Coworkers"); (6) the Auxiliary Director of Legal Affairs of the GSA, Teresa Garcia-Davila ("Garcia"); and (7) a former lawyer of the GSA Legal Affairs Office, Iris Vizcarrondo-Guerra ("Vizcarrondo"). All individual defendants are sued in their official and personal capacities.

**CIVIL NO. 10-1630 (SEC)** page 2 of 10

Pinzon-Bilbraut began working at the GSA in September 2008 as a General Service Auxiliary, responsible for answering the telephone, keeping records of the use of official vehicles, photocopying documents, and transporting internal mail through the GSA offices. Docket # 33, ¶ 5. His employment contract was for a fixed term, beginning in September 2008 and ending in December of the same year. Docket # 28.[1] The contract was not renewed at the end of the term, and, in February 2009, Pinzon-Bilbraut filed an action before the Equal Employment Opportunity Commission (the "EEOC"). Docket # 16. A right-to-sue letter was issued on May 14, 2010. Id. This suit followed two months later. Docket # 1.

Here, Pinzon-Bilbraut's alleges that the Coworkers subjected him to "a hostile work environment, harassment and disability discrimination[,] including but not limited to constant irritating comments about his mental impairment and his physical appearance...." Docket # 16, ¶¶ 35-37. He states that such conduct continued, even after complaining to his supervisors. Id.[2] Moreover, Pinzon-Bilbraut alleges that one of the Coworkers "verbally humiliated [him] on several occasions, mocking his disability condition and directing pejorative language toward him." Id. at ¶ 38. And that all of them made discriminatory and hostile comments toward him and his mother during an administrative hearing at the EEOC. Id. ¶ 46.

Against co-defendants Mendez and Vazquez, the complaint alleges that "they had supervisory authority over the other named defendants, and failed to adequately train and/or supervise the persons who participated in the adverse actions, discriminatory acts and omissions, hostile work environment and retaliation against Plaintiff." Id. at ¶ 26. Moreover, the complaint states that "Mendez and Vazquez participated directly and actively in the execution of the discriminatory, retaliatory and other adverse actions against Plaintiff, and/or

---

[1] Apparently, the contract was made possible due to a federally funded special program. Docket # 16, ¶ 30. The complaint, however, is unclear about this point.

[2] The supervisors are not part of this suit.

**CIVIL NO. 10-1630 (SEC)**                                                                                      page 3 of 10

failed to stop or take remedial actions to correct the situation, notwithstanding Plaintiff's notices and complaints." Id.

Pinzon-Bilbraut also alleges that co-defendants Vazquez, Garcia, and Vizcarrondo began an internal investigation to derail the EEOC administrative process. Specifically, he claims that those defendants "used the internal investigation in order to make attempts for Plaintiff's supervisors to perjure themselves and change their statements before the EEOC with the sole intent of covering up the discriminatory actions and hostile work environment to which Plaintiff had been subjected." Docket # 16, ¶ 42; see also ¶ 45. Furthermore, he avers that the internal investigation was a sham because Vizcarrondo represented the GSA before the EEOC (Id. ¶ 43), and because Vazquez, Garcia, and Vizcarrondo were friends with one of the Coworkers who constantly discriminated against him (Id. ¶ 44).

The complaint contains no allegations against the GSA or against the Commonwealth of Puerto Rico, apart from stating that "[a]t all times relevant to this complaint, defendants acted under color of law pursuant to their official positions in the GSA." Id. at 29. Lastly, the complaint sets forth the following general allegations:

> 1) In retaliation to Plaintiff's filing of the EEOC charge, defendants took adverse actions against Plaintiff, interfered and/or tried to sabotage the EEOC's factual investigation, and adversely impacted and/or chilled Plaintiff's exercise of his First Amendment Rights. Furthermore, there is a causal relationship between the protected activity engaged by Plaintiff and defendants' negligent, reckless and malicious conduct.
>
> 2) Other GSA employees with disabilities were hired under the same federal program simultaneously with Plaintiff, but the appearing party was the only employee with disability that was victim of harassment and discrimination by defendants.
>
> 3) Defendants retaliated against Plaintiff because he engaged in a protected activity under the applicable federal and local laws.
>
> 4) Defendants' actions were willful and in complete disregard of Plaintiff's rights under federal and local law.

**CIVIL NO. 10-1630 (SEC)**                                                                 page 4 of 10

      5) Defendants' conduct has caused Plaintiff emotional distress, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and mental damages.

      6) Defendants' conduct has caused Plaintiff past and present damages of economic nature and bodily injury.

Id. at ¶¶ 47-51.

Defendants moved timely to dismiss the complaint for failure to state a claim upon which relief can be granted. Docket # 18. But Pinzon-Bilbraut opposed the motion, arguing that the complaint provides enough allegations to withstand dismissal. Docket # 33.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[3] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be

---

[3] Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to allow the defendant *fair notice* of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).

**CIVIL NO. 10-1630 (SEC)** page 5 of 10

ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Twombly, 550 U.S. at 559, *cited in* Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007). Although complaints do not need detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Twombly, 550 U.S. at 556.

In Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court reaffirmed *Twombly* and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S. Ct. at 1949-50. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that

**CIVIL NO. 10-1630 (SEC)** page 6 of 10

merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1,12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Id. (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

In sum, a plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citing Twombly, 550 U.S. at 555). "[F]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008).

**Applicable Law and Analysis**

*I. The Constitutional Claims*

Pinzon-Bilbraut's constitutional claims arise under the First Amendment and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Regarding the First Amendment, although not explicitly stated in his complaint, Pinzon-Bilbraut appears to allege that Defendants retaliated against him for complaining about the Coworkers' harassment and for commencing an EEOC action. The complaint, however, nowhere establishes how the alleged retaliation came about. In any event, for a First Amendment claim to stand, a plaintiff must show that the speech impinged on involved matters of public rather than personal concern. See e.g., Tang v. State of R.I., Dept. of Elderly Affairs, 163 F.3d 7, 12 (1st Cir. 2005).

**CIVIL NO. 10-1630 (SEC)**  page 7 of 10

Accordingly, it is well settled that labor harassment claims such as the ones Pinzon-Bilbraut raises fail this standard. Id. (holding that complaints about working conditions are not matters of public concern involving First Amendment protection); Rosado-Quiñonez, 528 F.3d 1, 5-6 (1st Cir. 2008) (holding that labor harassment claims did not constitute matters of public interest for First Amendment purposes); Mulero-Abreu v. Oquendo-Rivera, 729 F.Supp.2d 498, 516 (D.P.R. 2010) (denying First Amendment protection to letter and verbal complaints regarding working conditions, as they were "classic examples of speech concerning internal working conditions affecting only the speaker and coworkers."). Pinzon-Bilbraut's First Amendment/retaliation claims are therefore **DISMISSED.**

Pinzon-Bilbraut's Fourteenth Amendment claims are similarly flawed. On this front, he first alleges that Defendants violated his procedural due process rights by not re-hiring him. To establish a procedural due process claim, however, "a plaintiff must allege that he was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." Maymi v. Puerto Rico Ports Authority, 515 F.3d 20, 29 (1st Cir. 2008). "Property interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Rosado De Velez v. Zayas, 328 F. Supp. 2d 202, 211 (D.P.R. 2004), *citing* Bd. of Regents of States Colleges v. Roth, 408 U.S. 564, 577 (1972). Under Puerto Rico law, "[a] constitutionally protected property interest in continued public employment typically arises when the employee has a reasonable expectation that her employment will continue." Gomez v. Rivera-Rodriguez, 344 F.3d 103, 111 (1st Cir. 2003). For this reason, contract employees such as Pinzon-Bilbraut lack a property interest in continued employment after the expiration of their employment contract. See, e.g., Caro v. Aponte-Roque, 878 F.2d 1, 4 (1st Cir. 1989). Accordingly, Pinzon-Bilbraut's procedural due process claims are **DISMISSED**.

**CIVIL NO. 10-1630 (SEC)**                                                                              page 8 of 10

His complaint next advances claims under the Equal Protection Clause of the Fourteenth Amendment. To successfully invoke the Equal Protection Clause, it is indispensable to demonstrate that the alleged inequality is the result of a law or statute. See Romer v. Evans, 517 U.S. 620, 633 (1996); Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 271-272, 99 S.Ct. 2282, 2292 (1979); Cooper v. Aaron, 358 U.S. 1 (1958). Pinzon-Bilbraut's complaint, however, unequivocally establishes that the discrimination complained of was the product of the Coworkers' unauthorized and illegal conduct. Accordinlgy, Pinzon-Bilbraut's complaint on this front also fails, and his Equal Protection claims are **DISMISSED**.

*II. The Statutory Claims*

As stated above, Pinzon-Bilbraut raises statutory claims under the ADA, the Rehabilitation Act, and Title VII of the Civil Rights Act. All of these statutes outlaw employment discrimination against disabled individuals. See 42 U.S.C. 12101; 29 U.S.C. § 794; 42 U.S.C. § 2000e et seq. Moreover, a viable cause of action for discrimination under any of these statutes requires a plaintiff to show, among other things, that he suffered an adverse employment action at the hands of his employer. See Feliciano v. State of Rhode Island, 160 F.3d 780, 784 (1st Cir. 1998) (stating requirements for a claim under Title I of the ADA); Mesnick v. General Electric Co., 950 F.2d 816, 827 (1st Cir. 1991) (stating requirements for a claim under Title V of the ADA); Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005) (stating requirements for a Title VII retaliation claim); Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1 Cir. 2006) (stating requirements for a retaliation claim under the Rehabilitation Act). The term "adverse employment action" is broadly defined and "include[s] any material disadvantage in respect to salary, grade, or other objective terms and conditions of employment." Sensing v. Outback Steackhouse of Florida, LLC, 575 F.3d 145, 157 (1st Cir. 2009) (internal quotations omitted). Nonetheless, "[t]o be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Honey v.

**CIVIL NO. 10-1630 (SEC)** page 9 of 10

County of Rockland, 200 F.Supp. 2d 311, 321 (2d Cir. 2002). And for comments to satisfy this standard, they must be so egregious as to "alter the conditions of employment." See Patterson v. McLean Credit Union, 491 U.S. 164, 180 (1989). Therefore, Pinzon-Bilbraut's complaint is inadequate, as it contains no allegations stating that there was a change in the conditions of employment during the three-month period that he was under contract with the GSA. See Collins v. State of Illinois, 830 F.2d 692, 704 (7th Cir. 1987) (an unfriendly working environment without more, such as a change in responsibilities or a diminution of status, does not constitute an adverse employment action).

Moreover, as stated above, although Pinzon-Bilbraut's complaint alleges that Defendants retaliated against him, it fails to establish how the alleged retaliation came about. A retaliation claim for failure to rehire could be raised under any of the statutes Pinzon-Bilbraut's complaint is predicated on. Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 19 (1st Cir. 2006). Nonetheless, for such a claim to succeed, a plaintiff would have to prove that he applied for a particular position, that the position was vacant, and that he was qualified for it. Velez v. Janssen Ortho, LLC, 467 F.3d 802, 807 (1st Cir. 2006). Pinzon-Bilbraut's complaint alleges none of these requirements.  Further, it is publicly known that early in 2009, newly elected Governor Luis G. Fortuño declared the Government of Puerto Rico to be in a state of fiscal emergency and ordered a freeze in all governmental hiring. See Executive Order 2009-1. Then, on March 9, 2009, Public Law No. 7 (known as the "Law Declaring a Fiscal State of Emergency and Establishing a Comprehensive Fiscal Stabilization Plan to Save Puerto Rico's Credit") was enacted, requiring, among other things, all vacant governmental positions to be closed and all transitory and irregular governmental employees to be laidoff. Under these circumstances, Pinzon-Bilbraut cannot claim that the GSA denied him a vacant position, which forecloses a

**CIVIL NO. 10-1630 (SEC)** page 10 of 10

failure-to-rehire retaliation claim. For all these reasons, Pinzon-Bilbraut's statutory claims are **DISMISSED**.

*III. The State-Law Claims*

Having dismissed Pinzon-Bilbraut's federal-law claims against Defendants, his state-law claims are **DISMISSED without prejudice.** See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit.").

**Conclusion**

Based on the foregoing, Defendants' motion to dismiss is **GRANTED,** and the case is **DISMISSED with prejudice.**

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 6th day of July, 2011.

                                                s/ *Salvador E. Casellas*
                                                SALVADOR E. CASELLAS
                                                U.S. Senior District Judge